Okay, I think we're ready. Thank you, Your Honor. May it please the Court, Kayla Robinson for the Academy of Country Music. I'd like to reserve five minutes for rebuttal. Sure, just watch your time, please. There are many issues in the briefs, but I'm hoping we can streamline some of the issues today and focus really on what the panel needs to decide. What the panel doesn't need to decide is the scope of the coverage grant here. Continental has never argued that the claim at issue doesn't fall within the EPL coverage grant. They don't defend the District Court's determination on that point and, in fact, say that the Academy can't have been prejudiced by the District Court raising an issue sui sponte on this front. I think for me, Counsel, the concern is how could someone purchase insurance that covers a knowing violation of an underlying contract? I mean, that doesn't seem to be the nature of insurance, which is more based on fortuities. No, I think that's right. Well, first of all, California law does permit a breach of contract to be insured. This Court has so decided. California courts have so decided. We're not contending that this is a knowing breach and that a knowing breach is covered. However, to the extent that that's Your Honor's concern, I don't think this is the case to decide it is the argument that this isn't within the coverage, and they forfeited it by failing to raise it below and by failing to Did they explicitly say they weren't raising that issue when they were in the District Court? They have said within the record that we've submitted, they said in coverage correspondence that this constitutes a claim for purposes of the EPL coverage. They did not raise it in their briefing below, which is obviously a forfeiture, and I think they've So the District Court just on its own went off on that issue? That's right, Your Honor. And you argue that that was error because the Court didn't give notice that it was going to grant summary judgment on a theory that wasn't That's right, Your Honor, and we also argue that it's error on its own terms. Well, we can affirm on any basis supported by the record, so even if the District Court went off on the wrong issue, we could still affirm if the record supports that. That's true, Your Honor. I mean, it has been, as we say, affirmatively waived, and we'd ask for the opportunity to submit Continental's discovery responses in which they affirmatively state that they are not contending I thought the District Court also said, well, even if it's, you know, notwithstanding that it's not covered, it was a knowing violation, and therefore it's not a loss. That's right. I think, first, the District Court skipped over because of its misreading of the policy. The District Court skipped over whether this is a written contract of employment, and it just simply tortures the policy language here to say that a separation agreement that didn't provide for payment for services, but provided for payments in exchange for releases that terminated his employment contract, that didn't require, although it required minimal transitional services, it did not require the executive to perform in order to get those payments. The payments were to be made in exchange for the releases. So now are you talking about this? It's kind of the same argument, it seems to me, but packaged in an exclusion. Is that right? So the knowing violation, right? And there's this analysis to the D&O coverage where it doesn't matter whether it's an employment contract or not, but under the, is it EPL contract? Yeah. It does matter. Yes. But either way, going back to the first question, on the EPL side, you have to show a knowing violation of an employment contract, right? On the EPL, no, you don't have to show a knowing violation. In fact, if you show a knowing violation, you fall within the exclusion. That was what I was positing, but go ahead. Well then, yes, I agree that for purposes of the EPL coverage, if there is a knowing violation of a written contract of employment, then that's excluded. Right, so I'm not trying to be unclear, but I think I am being, just following up on Judge Fitzwater's question, there's the coverage issue, and then it seems to me that that same basic issue is repackaged in this exclusion that you're just speaking about now, knowing violation of the employment contract. Yes. And you argue at length about whether this is or is not an employment contract, right? Yes. And for that exclusion to apply, there would have to also be a knowing violation? That's correct. Okay. I think we're on the same page now. Okay. Okay. I will say that an important distinction between the question of the coverage grant leaving aside the waiver and the forfeiture is that coverage grants are to be construed broadly and in favor of coverage, whereas exclusions are to be construed narrowly and can only be applied if they clearly and unambiguously exclude the losses at issue. So there is a distinction between, you know, looking at the coverage grant. They're not exact mirror images. There also isn't, you know, there is a free-floating, I guess, public policy concerns that Continental raises. The only argument that they make on that front, though, is with respect to a coverage exclusion for matters that are uninsurable. Contract images are not uninsurable under California law. They don't cite any authority for that proposition. And the one case that they do cite talks about the scope of D&O coverage under a different policy. It doesn't talk about, you know, of course, this coverage language, and it does not say that contract images are uninsurable. So just going back to the exclusion for knowing violation of a written contract of employment, we contend that this is not a written contract of employment because the purpose is clearly to sever his employment. It did not. It terminated the employment agreement, including a provision of the employment agreement that said the executive is an employee of the company for all purposes. But what about the difficult fact for you, which is that it's called the severance agreement, but it's still called for some performance, at least at the election of the Academy? It called for minimal transitional services, that's correct, if the Academy asked. For a period of a year, I think. For a period of a year. That's a very standard term in termination agreements. It's a standard term in business sale agreements and stock purchase agreements. And it doesn't convert those kinds of agreements into what a layperson would call an employment contract. An employment contract is you're contracting for services in exchange for payment. He was to be paid at the monthly rate, correct? He was to be paid for 12 months, right? With the regular benefits that he had been receiving under the previous agreement. The provision does say at the end, unless otherwise requested by the executive. So that wasn't the manner of his payment was not a material term. He could have requested payment in a different manner under the language of the policy. It's more of administrative convenience. With respect to the. What's your best case that says that this is not an employment agreement? I actually think that the ERISA cases, although they are distinguishable in other respects, are helpful in that they consider things that might have elements of an employment contract. And sort of parse out bit by bit, whether something is an employment contract, whether it's not an employment contract. So that's the Maslow's key case. The Marcia case and the majestic case cited in our briefing. And we think that, you know, even the Maslow's key case, which Continental relies on, talks about a salary continuation agreement, looks to Black's Law Dictionary and says the salary continuation agreements, which were entered into at the beginning of or or in the midst of employment relationships with the executives at issue. They required that the purpose was to entice them to stay or entice people to come to the company, and they required exclusive services for the company. So that's a very different kind of contract than the separation agreement at issue. The ERISA cases that do talk about separation agreements or termination agreements are the Marcia and majestic cases. And in those cases, they the contracts just look a lot more like the contracted issue here. Their termination or settlement agreements. I believe it's footnote four in the majestic case specifically says that the fact that there were minimal transitional services to be provided didn't convert the separation agreement. I think it was a settlement agreement was the term in that case. Didn't convert it into an employment contract for purposes of the ERISA statute. So I think the ERISA context is very different in that there's no thumb on the scale in favor of one party or another. It's just sort of blue sky analysis. Here, the Academy of Country Music benefits from, if there's any ambiguity, it needs to be resolved in favor of coverage. Could you speak a little bit to willfulness of the breach? The arbitrator seemed to think that your client didn't deny breaching the contract. I understand your client thought that there had been a breach. I think it was a breach found by Mr. Romeo, although not a material breach. But she also found that your client didn't act in good faith. That's right. Could you speak to that? Yes. So the finding that the Academy didn't act in good faith concerned the overall course of conduct between the two parties. And the fact that it was a 14-year or something like that relationship between the parties. It didn't focus on, well, you clearly knew that you were not excused from your responsibilities under the separation agreement. It focused on the fact that, well, overall, you benefited from this relationship and you should have continued the payments. That doesn't go to whether the violation of the contract was knowing. In fact, there's no evidence that the violation of the contract was knowing. They hired an outside law firm in order to investigate the executive's actions and determined that he had breached his employment contract. And on the basis of that, took a vote. Right. But the arbitrator also found that what the law firm came back with, which was, I think, the charitable contributions, the arbitrator described that as the primary motivation for the board's action and said the board knew or should have known about that for years. That had been going on for years. That was disclosed in tax returns and whatnot. So what about that? That seems to me to be a tough fact for your client. I think it still does not establish a knowing violation of the separation agreement. The board would have had to have known that what they were doing was in breach of the contract. And I think that's getting really deep into the weeds of the relationship and saying, OK, well, I have to consider this fact and this fact and this fact and this fact is not a clearly established knowing violation from the perspective of lay people who say it's not the kind of breach if I contract for apples and say I'll give you $5. If I don't give you the $5 and you've given me the apples, then that's a knowing breach if there's no basis for holding that back. Were there other facts other than the charitable donations that the board relied upon? The board also relied on the executive's use of company property for his own personal gain. He used airline miles. He used private flights. He also used credit card points for his own personal benefit. So they also relied on his appropriation of those funds. Fitzhutter, do you have additional questions? I just would like her to address the other exclusion, the compensation. Yes. Why doesn't that exclusion apply? So that doesn't apply because this is not compensation earned in the course of employment. These were sums contracted for under a separation agreement. So they were severance payments? Well, you might call them severance payments in the abstract, but they're not severance payments for purposes of this exclusion. Why not? Well, because the exclusion requires that even severance payments be compensation earned in the course of employment. So Continental can't establish that this is compensation earned in the course of employment. They specifically define severance with respect to that limiting factor. So that would be something like accrued vacation days, deferred compensation, something you might earn in the course of employment. And if there are no further questions, I'd like to just retain a little bit of time for rebuttal. Not to worry. When you come back, we'll put two minutes on the clock. Okay. Thank you. So you can plan on that while you're making your notes over there. We'll hear from opposing counsel, please. May it please the Court, Richard Simpson on behalf of Continental Casualty Company. There is a threshold issue here concerning the insuring agreement that we did raise and the district judge got exactly right, and that is this has to be a contract for employment in order to trigger the insuring agreement. If the separation agreement is not a contract for employment, then there's no coverage. And, in fact, if any party would argue that, you would expect it to be Continental because we paid nearly $900,000 in defense costs. We didn't contest that this falls in the insuring agreement because we agree it is a contract for employment. But if it wasn't a contract for employment, we wouldn't owe anything. What the academy is attempting to do here is have their cake and eat it, too, by threading a needle that can't be thread, saying it's not an employment contract for the purpose of the exclusion, but we still come within the insuring agreement because it's somehow related to a contract for employment. So if you're conceding that it's an employment contract, you have to be arguing that there was a willful breach? Excuse me, Your Honor?  Yes. A knowing breach, I think, yes. Yes, we acknowledge it's an employment contract. Our point, and the district judge agreed, and we did raise this, was if it's not an employment contract, then we pay $900,000 we don't owe. It is an employment contract, and there was a knowing violation, and for that reason, the exclusion applies. Now, the exclusion does not apply to the defense costs. We paid the defense costs, but the exclusion is part of the definition of loss, and it says loss doesn't include amounts that are owed as a result of an act or omission in knowing violation of a contract. It doesn't say fraudulent. It doesn't say evil intent. It says knowing. They certainly acted knowing, but they come back and say, well, it wasn't a knowing violation of the contract. They say, well, you know, we had this report that said that he violated the terms of his employment by making these donations, and therefore, in our assessment, you know, it wasn't. We may have acted knowingly in terminating the payment, but we didn't think it was in violation of the contract. There are two things, Your Honor, at least. It was knowing in the sense, as Your Honor indicated, they made a conscious decision, and that's what knowingly means, not to pay amounts that were called for by the contract, and they did that not acting in good faith. The distinction between knowing and unknowing violations goes to exactly that point of whether there's a conscious decision not to honor the contract. So, for example, and this is in one of the cases that the Academy cited, the Erickson Hall construction case. You can have an unknowing violation of a contract. Say, for example, that there's a mistake in administering employee benefits and because of a problem with the paperwork, the employee isn't enrolled in the health insurance program as the employee had been promised he would, and as a result, benefits aren't paid. That's not a knowing violation of a term of the contract. It's a mistake they made. It's negligence. Here, there's a conscious decision not to pay amounts that are owed and called for by the contract. That would be enough by itself, but on top of that, you have it wasn't even a good faith decision not to pay. It was not. They violated the duty of good faith and fair dealing as well. So that's why it falls within this knowing violation concept. Could I ask you to respond? Opposing counsel's argument is that the board didn't knowingly fail, but rather acted, we should construe this record to show that they thought their performance was excused because Mr. Romeo breached, and in fact the arbitrator found that he breached, but that it was not a material breach. Is there enough play in there for her to make the argument that that's why their failure to pay was not a knowing contractual violation? Yes, Your Honor. We believe that it would be enough that they made the conscious decision, but you do have more here because, and Your Honor referred to this in the questioning earlier, the arbitrator went on to find in detail that the academy did not act in good faith when it terminated the payments, that the issues that it cited as supporting its not having an obligation to pay it had known about all along, and that the breaches by Mr. Romero were not material, and that the board knew or should have known they weren't material, that they weren't acting in good faith. And that's what makes it knowing. This point is why I have notes. I think three places in the briefing, your brief represented that the arbitrator found that the board's decision to hire the law firm was a pretext and that they never intended to honor the obligations. I think that that is not correct. You are right. It is not correct, and I apologize. Did you file something correcting your brief? We did not file something correcting the brief, Your Honor, but I intended to acknowledge that, in fact, it was a mistake on our part. That comes from a section of the arbitration award that's reciting allegations. The arbitrator then goes on and upholds the finding, makes a finding, but that was a mistake on our part for which I apologize that we did not catch on our site checking. Okay. It is in your brief three places, and for me it's a very critical issue in the case, right, because I read your briefing to not contest that this is an employment contract. I think you are arguing they can't have their cake and eat it, too. Yes. It's an employment contract, and so for this exclusion to kick in, it's critical for you to show a knowing breach. So that's why this was so important to me, and I'm only one of three, but for me that was an important point on my scorecard. What does it mean? What should we make of the arbitrator's finding that the board did not act in good faith? Because that I do agree with. I think she made that finding. Yes, the arbitrator did find it was not in good faith and based it, as I described, on basically a conclusion that the breaches by Mr. Romero were not material and the arbitrator's decision that the board knew or should have known about the facts they were relying upon earlier. I think that it would be knowing just because it was a conscious decision not to pay amounts called for by the contract explicitly, but the good faith buttresses that because what it says is that when— Bad faith buttresses that? Excuse me? Do you mean the bad faith? I'm sorry, the failure to act in good faith. Oh, okay. The arbitrator never says bad faith. She always phrases it in terms of not acting in good faith, which I think means bad faith. That's how I translated it. Okay. Okay. And basically then what you have here is an intentional decision, a conscious decision not to pay, and a finding by an arbitrator that that was made in bad faith. Are we bound by that finding?  Or is the court bound by that finding? I believe so in the sense that that's what the coverage is being sought for and the academy had a full and fair opportunity to litigate it, and a finding was made against them. So I believe that they couldn't come in now and contest the findings that the arbitrator made, so I believe so. And, Your Honor, that's, as I say, sort of the extra point is it wasn't just a conscious decision. It was a bad faith conscious decision. Right. So maybe that's why I think of this as sort of repackaging Judge Fitzwater's original question was why shouldn't we view this as a contract for insurance? At least the opposing counsel wants us to say this is a contract for insurance for a knowing violation. Well, a couple of things. It's not. That's the coverage issue. Yes, and I think Judge Fitzwater is correct. You don't have to reach this issue, but to allow indemnity coverage for a knowing violation we argue is against public policy. But even in that context, there's defense coverage for an allegation that there was a violation of an employment contract. So our exclusion doesn't say you don't get coverage at all. It says you don't get indemnity coverage in essence. You don't get amounts you owe because you knowingly violated the contract. And so we paid almost $900,000, our client did, paid almost $900,000 in defense costs and have never suggested we didn't owe that, we get that back. But once you reach the point of the finding, they knowingly violated it in bad faith, they owe that money, they should have paid under their contract both under the terms of the policy and as a matter of public policy, you can't pay that. Now, we don't argue, as the reply brief suggests, that a breach of contract claim is always against public policy. As the case I cited earlier that they cite explains, it depends on the nature of the breach and the nature of the claim. If you've got the example I gave, an administrative error, you made a mistake, you didn't fill out the paperwork correctly, that breaches the contract, but you didn't knowingly fail to honor. That's different. But here, where you've got a bad faith knowing decision, then the exclusion applies and public, I say exclusion, it's a carve out from loss, it only applies to indemnity and public policy as well. And I would like to speak briefly, there's no need to reach it as the district court found, but this is compensation earned in the course of employment. And all that exclusion, again, is a carve out from loss. It says compensation earned during the employment. So that's the focus, is did Mr. Romero earn this during his employment? How can it be earned? How can it be earned? Excuse me? How can it be earned? He wasn't working during this time. For me, this seems like a much harder argument, so I'm all ears. Yeah, let me explain it. The employment contract, this is a four-year contract, and it provides, this is section 7.5B, the employment contract. If he's terminated without cause, which is what happened here, they didn't terminate him for cause. If he's terminated without cause, he doesn't have to perform any more services, but he'll be paid until the end of the contract term, which is. . . But that's not earned. He's not performing services by definition, right? Well, I would disagree. The hook for me is that this particular severance agreement did allow them to require him to do some nominal work. Yes, and we argue that as well, but if you look at the two documents together, it's not a lot different than, say, a baseball player who's injured and can't play. If you've got a four-year contract and the employer says, we're going to pay you for four years, and if we decide to let you go without cause, we're going to continue to pay you for four years. Well, maybe Judge Fias watches more baseball than I do. I don't know. I think this is a harder argument for you to make. Well, I urge Your Honor then to also look at the. . . Taking that argument, how do you deal with the special amount, the bonus amount, the special payment? Yes, it was undisputed that that was in lieu of the bonus he would have received in the same month. Under the. . . Under the employment contract. So basically what the severance agreement is implementing the termination. . . the separation agreement is implementing the termination without cause provision, and that's why, Your Honor. It struck me that they might have been trying to just convert this all to a termination with cause. Excuse me? It struck me that CMA or what is it? The Academy. The Academy was just attempting to switch this to a termination with cause. I think there's a lot to that because they did terminate him without cause, and then after the fact, and again with a finding that it was in bad faith, stopped paying him the amounts that he would have gotten under the employment contract and was entitled to under the severance. So they're treating it as though it was with cause, although. . . And the arbitrator found they knew about, knew or should have known, about all these things that they were citing as their justification for stopping the payments. They already knew about all that. And I do, to Your Honor's question about it being an employment-type earned income, if you look at the separation agreement, Section 1B says his employment is terminated for all purposes on August 31, 2017, which is the end of the separation agreement and was also the end of the employment agreement. So he is an employee for some purposes through that date. And then if you look at Section 2B, it says they'll continue to pay his base salary and car allowance, maintain his health benefits, give him the payment in lieu of a bonus. And then it says the base salary is paid on regular paydays in accordance with usual payroll practices, including the deductions. And so he's being treated as an employee during that entire separation period. Basically what they've done is to say, we're going to remove you from your position. We don't have cause to remove you. This is in the separation agreement, but we'll keep paying you until the end of the term, just like we always have, just like any other employee. Every two weeks you get a check. You have deductions from the check for taxes and other items. And at the end of what would have been your employment term, we're done. And so it clearly is intended to be compensation, and we believe it was earned from employment because he's getting it because he had a four-year employment contract that the academy was terminating early without cause. And so, again, there's no need to reach that because as long as it's a knowing violation of a contract of employment, there's no coverage on the grounds that the district court found. And on top of that, it has to be a contract of employment or Continental doesn't owe anything, including the defense cost. We overpaid. And so we did acknowledge it comes within the insurer agreement, but by doing that we were erring on the side of providing coverage for the insured. If we had taken the position it wasn't an employment contract, we would have denied entirely. So unless there are additional questions, we would ask that the court affirm the judgment. Do you have more questions? None. Thank you. It looks like we're done. Thank you, Your Honor. Thank you, counsel. So with respect to the question of whether there is a knowing violation, I commend to the court the Clement v. Smith case cited in our briefing. In that case, the argument was very similar. It was a broker liability case, but a sort of similar paradigm, where what was being argued is that there could not have been coverage. They could not have purchased coverage at all for this kind of breach, because what the insured had done was purposely say, I'm not going to perform under this contract because I think I'm excused, because I don't think the other party performed. There's actually a note in that opinion that says that he had perhaps even acted unreasonably in connection with his breach of the contract, and yet the basis for the court's causation decision in Clement v. Smith is that he could have found that kind of coverage out on the market. So Clement v. Smith is very similar to these circumstances and underscores that this is insurable under California law. I'd just like to back out with respect to the discussion about wrongful termination. Wrongful termination is covered under the policy. So to the extent that there is a whiff of suggestion that the Academy was behaving in bad faith by creating a contract and then trying to back out of it, they were in a worse position by entering into the separation agreement because they then had built up this contractual dispute and sort of shifted it out of the wrongful termination contract. So it doesn't make sense that they were trying to behave in bad faith or somehow trying to make Continental the guarantor of their actions. I just have a couple of seconds. Are there any further questions? There does not appear to be. Thank you both for your argument and preparation today. We'll take that case under advisement and stand in recess for the hearing. All rise.
judges: PAEZ, CHRISTEN, Fitzwater